1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

7
8
9
10
11

| | |
|---|---|
| STEPHANIE HEREDIA, | Case No.  16-cv-06236-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| EDDIE BAUER LLC, | [Re:  ECF 29] |
| Defendant. | |

12
13
14
15
16
17
18
19
20
21
22
23

The well-known outdoor lifestyle brand Eddie Bauer is one of the latest retailers facing allegations that the company failed to compensate its employees for time spent undergoing off-the-clock "exit inspections" before leaving the store.  Plaintiff Stephanie Heredia worked as a sales associate at an Eddie Bauer retail store in Gilroy, California from November 2013 to March 2016.  During that time, she alleges that she was required to undergo inspections of her personal belongings—otherwise known as "bag checks" or "security inspections"—whenever she left the store.  It was Heredia's understanding from conversations with her managers that Eddie Bauer's security inspection policies required such bag checks to occur after she clocked out.  Heredia now sues her former employer for failing to compensate her for the time spent waiting for, or undergoing, these security inspections.

24
25
26
27
28

Before the Court is Heredia's motion for class certification of four causes of action in her Complaint. *See* Motion for Class Certification ("Mot."), ECF 29.  Heredia seeks to represent a class of all current and former non-exempt retail store employees who were employed by Eddie Bauer in California at any time from September 28, 2012, through the present.  Eddie Bauer opposes the motion for class certification, and argues that its employees are only subject to

security inspections if they carry a bag or parcel that can be used to steal store merchandise. Moreover, Eddie Bauer asserts that such bag checks are to be conducted on-the-clock pursuant to its policies and practices. *See* Opposition to Motion for Class Certification ("Opp'n"), ECF 30. Heredia responds that Eddie Bauer's arguments are either misleading or irrelevant to the issue of class certification. *See* Reply, ECF 31.

The Court held a hearing on Heredia's motion for class certification on October 12, 2017. The Court has considered the arguments presented at oral argument and in the briefing, as well as the submitted evidence and applicable law. For the reasons that follow, the Court hereby GRANTS Heredia's motion to certify the class.

## I.    BACKGROUND

Eddie Bauer is an international brand that operates retail stores in California, including a store at the Gilroy Premium Outlets where Plaintiff Stephanie Heredia ("Heredia") worked as a non-exempt retail store employee from approximately November 2013 to March 26, 2016. *See* Plaintiff's Compendium of Evidence ("Heredia Evid."), ECF 29-4, Exh. 5, Declaration of Stephanie Heredia ("Heredia Decl.") ¶ 2. In preparation for this motion for class certification, the parties chose to conduct only two depositions: (1) Heredia; and (2) Eddie Bauer's FRCP 30(b)(6) witness, Keith Long, who was designated to testify to topics related to Eddie Bauer's security inspection policies. *See* Declaration of Kristen M. Agnew ("Agnew Decl.") ¶¶ 3-4, ECF 29-2. The following factual background primarily derives from those depositions.

Because Eddie Bauer's retail stores carry a variety of merchandise that is susceptible to theft, Eddie Bauer requires that all of its retail employees submit to a security inspection before exiting the store, whether the employee's departure is for a meal break, rest break, or to go home at the end of a shift. *See* Heredia Evid., Exh. 4, Deposition of Keith Long ("Long Depo.") 53:9-15, 55:18-56:2, 65:14-66:7. This security inspection at Eddie Bauer is known as its "Personal Property Inspection Policy," and, at least in written form, the policy only applies to retail employees who carry a bag or container that could be used to conceal company merchandise. *See* Long Depo. Exh. 7-8. At some point on or before November 10, 2016, Eddie Bauer's written policies added the clarification that "[p]ocket searches, checking pant legs, frisking, patting-down

United States District Court
Northern District of California

1  or other such activities are not allowed." *See* Long Depo. 62:21-64:22; Exh. 8.  If an employee

2  carried a bag or container to work, failure to submit to a personal property inspection could result

3  in the employee's termination from Eddie Bauer.  *See* Long Depo. 66:23-67:1.

4        The "Personal Property Inspection Policy" at Eddie Bauer is set forth in various written

5  documents, including the Associate's Resource, Policies, and Procedure's Handbook

6  ("Handbook"), the Standard Operating Procedures regarding Package/Personal Property Checks

7  ("SOP"), and the Store Associate Resource Guide ("Resource Guide").  *See* Long Depo. 57:23-

8  58:15; Exh. 7-9.  Eddie Bauer's SOP provides as follows:

9        At Eddie Bauer, it is company policy to inspect associate packages and
10       provide control of associates' personal belongings, helping ensure that
         property losses are minimized.

11       All associates must have their handbags, packages, briefcases, backpacks
12       and other parcels, inspected by a member of store management whenever
         they leave the store.  Package checks are also completed for breaks and
13       meal periods, or whenever associates leave the store for any reason.

14       When conducting the package inspection, have the associate remove or
         move items to allow for an adequate inspection.

15       The Inspection is limited to bags, packages and other containers that might
16       be used to conceal company property. **Pocket searches, checking pant
         legs, frisking, patting-down or other such activities are not allowed.**

17  *See* SOP at 2, Long Depo. Exh. 8 (emphasis in original).  The Resource Guide and Handbook

18  contain similar information, although they omit the last two paragraphs of the SOP. *Id*. 75:10-15;

19  Exh. 7, 9.

20        Importantly, Eddie Bauer's written policies are silent on whether the employees must clock

21  out before or after undergoing the required security inspections, or whether managers are to advise

22  employees that the inspections are to be conducted on-the-clock. *Id*. 77:14-20; 82:8-12; 83:25-

23  84:11.  Although not in writing, Long testified during his deposition that it is Eddie Bauer's policy

24  to train managers to conduct personal property checks while employees are still clocked in. *Id*.

25  77:14-20.  Thus, a central dispute underlying this lawsuit is whether Eddie Bauer appropriately

26  compensated the putative class members for time spent undergoing security inspections—

27  including time spent waiting for managers to be available to conduct those inspections—during

28  the Class Period.

1   Heredia worked as a sales associate at Eddie Bauer's Gilroy store from November 2013 to

2   March 26, 2016. *See* Heredia Decl. ¶ 2.  During her deposition, Heredia testified that she "always"

3   carried a purse or wallet with her to work, and she was subject to a security inspection whenever

4   she left the store pursuant to Eddie Bauer's policies.  *See* Heredia Evid., Exh. 3, Deposition of

5   Stephanie Heredia ("Heredia Depo.") 37:14; *see also* Heredia Decl. ¶ 2.  It was Heredia's practice

6   to clock out before exiting the store either for a break or at the conclusion of her shift. *See* Heredia

7   Decl. ¶¶ 3, 5.  After she clocked out, she would gather her belongings and look for a manager to

8   initiate the security inspection process. *See* Heredia Depo. 45:12-18, 131:14-132:2.  Thus, the time

9   spent undergoing a security inspection included time waiting for a manager to become available to

10  perform the inspection, as well as the time spent inspecting the bag. *Id.* 55:4-17; 71:10-17; 73:9-

11  15; 118:24-119:3.  According to Heredia, "[e]verbody waited until after they clocked out" to have

12  their bags checked. *See* Heredia Depo. 46:19-22.

13   Heredia also testified that in practice, Eddie Bauer's security inspection policy was broader

14  than its written policy suggests.  Although Eddie Bauer's written policies only refer to personal

15  property inspections, Heredia testified that managers also performed "visual inspections" of

16  employees exiting the store. *Id.* 42:22-42:1, 85:8-18; *see also* Heredia Decl. ¶ 4.  For example,

17  Heredia testified that male employees had to pat themselves down to show the managers that they

18  did not have any merchandise in their pockets, or take out whatever they had in their pockets. *See*

19  Heredia Depo. 42:3-43:7.  Female employees did not have to pat themselves down, but they had to

20  show the manager whatever they had in their hands such as a cell phone or keys. *Id.*  If an

21  employee, male or female, was wearing a coat or jacket, the employee would have to "shake" their

22  jacket to demonstrate that it was not concealing any merchandise. *Id.* 101:18-25; Long Depo.

23  65:6-10; Heredia Decl. ¶ 4.

24   During her employment, Heredia did not actually know the contents of Eddie Bauer's

25  written policies regarding personal property inspections, and she never asked to see a copy of the

26  written policies.  *See* Heredia Depo. 49:8-50:17.[1]  Rather, Heredia testified that when she was

27  _____

28  [1] This portion of Heredia's deposition is omitted from Heredia's Compendium of Evidence but is
    highlighted in Eddie Bauer's Declaration of John D. Meer in Support of Defendant's Opposition

United States District Court
Northern District of California

1    hired she had conversations with two managers at the Gilroy store regarding the security

2    inspection policy.  *See* Heredia Depo. 46:12-18.  Based on these conversations, Heredia

3    understood that Eddie Bauer's policy required security inspections to occur after the employee had

4    clocked out.  *See* Heredia Decl. ¶ 5; Heredia Depo. 46:12-18, 50:19-51:21, 52:15-54:11.  In fact,

5    Heredia's managers actually instructed her to clock out and wait at the front of the store before the

6    manager would conduct a bag check.  *See* Heredia Decl. ¶ 5; *see also* Heredia Depo. 55:11-17,

7    123:22-25, 126:6-13.

8            Heredia concedes that the actual security inspection "lasted less than one minute," but she

9    testified that the entire process could be significantly longer because of the time spent waiting for

10   the manager to be available to conduct the inspection. *See* Heredia Decl. ¶ 6.  In Heredia's

11   experience, she waited for a manager for 15 to 20 minutes while she was off-the-clock before the

12   manager conducted the security inspection during closing shifts.  *See* Heredia Depo. 122:13-123:6.

13   However, Heredia also observed that other employees usually waited "five minutes or less" for a

14   manager to conduct an inspection. *Id*. 132:14-17.

15          On September 28, 2016, Heredia sued Eddie Bauer in Santa Clara Superior Court on

16   behalf of herself and others similarly situated, asserting causes of action for (1) failure to pay

17   minimum wages in violation of Cal. Labor Code §§ 1194, 1197, and 1197.1; (2) failure to pay

18   overtime wages in violation of Cal. Labor Code §§ 510, 558; (3) failure to provide proper meal

19   breaks in violation of Cal. Labor Code §§ 226.7 and 512; (4) failure to provide proper rest breaks

20   in violation of Cal. Labor Code §§ 226.7; (5) failure to provide accurate wage statements in

21   violation of Cal. Labor Code §§ 226(a); (6) violation of Cal. Labor Code § 2698, Private

22   Attorneys General Act ("PAGA"); and (7) unfair business practices in violation of Cal. Bus. Prof.

23   Code §§ 17200, *et seq*. *See* ECF 1-1 ("Compl.").  Eddie Bauer removed the action to this Court on

24   October 27, 2016. *See* ECF 1.

25          Heredia now moves under Federal Rule of Civil Procedure 23(b)(3) for this Court to

26   certify a class of:

27

28

---

to Plaintiff's Motion for Class Certification, Exhibit A. *See* ECF 30-1.

All current and former non-exempt retail store employees who were employed by
Defendant in the State of California at any time from September 28, 2012, through the
present (the "Class").

Mot. at 2.  Heredia only moves to certify the First Cause of Action (unpaid minimum wages),
Second Cause of Action (unpaid overtime compensation), Fifth Cause of Action (wage statement
violations) and Seventh Cause of Action (UCL violation). *Id.*

Eddie Bauer opposes certification of any causes of action, arguing that Heredia has not met
her burden to establish the requirements of Rule 23(a) or Rule 23(b)(3).  *See generally* Opp'n.
The Court finds that despite the parties' disputes regarding the legality of Eddie Bauer's security
inspection policy, the proposed class meets the requirements of Rule 23(a) and Rule 23(b)(3).  For
the reasons that follow, Heredia's motion for class certification is GRANTED.

## II.    JUDICIAL NOTICE

Grants of judicial notice are a matter of judicial discretion.  *See United States v. Nat. Med.
Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1994).  The Court may take judicial notice of documents
referenced in the complaint, as well as matters in the public record. *See Lee v. City of L.A.*, 250
F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*,
307 F.3d 1119, 1125–26 (9th Cir. 2002); *see also Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.
1994); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).  In addition, the Court
may take judicial notice of matters that are either "generally known within the trial court's
territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy
cannot reasonably be questioned." Fed. R. Evid. 201(b).  Public records, including judgments and
other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482
F.3d 1035, 1041 (9th Cir. 2007).

Heredia requests judicial notice of three documents from legal proceedings in state and
federal courts that involve class certification under similar factual circumstances.  *See* Request for
Judicial Notice ("RJN"), ECF 29-5.  Heredia's exhibits consist of orders from other courts
granting class certification as well as a transcript from a hearing on a motion for class certification
in this Court in another action. *See* RJN Exh. A-C.  Eddie Bauer does not oppose Heredia's

request for judicial notice.  The Court finds that the exhibits to Heredia's request for judicial

notice are matters of public record and are relevant to these proceedings.  *See* Fed. R. Evid. 201.

Accordingly, the Court GRANTS Heredia's request for judicial notice of Exhibits A-C, and will

consider these documents where applicable and relevant.

## III.   LEGAL STANDARD

Because a "class action is an exception to the usual rule that litigation is conducted by and

on behalf of the individual named parties only," the party seeking to maintain a class action must

"affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S.

27, 33 (2013) (internal citations omitted).  First, the party must prove compliance with Rule 23(a).

Under Rule 23(a), class certification is appropriate if: "(1) the class is so numerous that joinder of

all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed.

R. Civ. P. 23(a).  In other words, the class must satisfy the requirements of numerosity,

commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co.,*

*Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

Second, the party "must also satisfy through evidentiary proof at least one of the provisions

of Rule 23(b)." *Id.*  Here, Heredia seeks to certify a class pursuant to Rule 23(b)(3), which requires

that "questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23 outlines four

pertinent factors to the Court's analysis in determining the appropriateness of a (b)(3) class: the

class members' interest in individually controlling the action; the extent and nature of already-

existing litigation regarding the action; the desirability (or lack thereof) of concentrating the

litigation of the claims in a single forum; and manageability of the action.  *See* Fed. R. Civ. P.

23(b)(3); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 350 (2011).  Instead, a plaintiff seeking class certification must demonstrate that there

United States District Court
Northern District of California

1    are sufficient facts to support his contention that class certification is appropriate. *Id.* "[A]

2    court's class-certification analysis must be rigorous and may entail some overlap with the merits

3    of the plaintiff's underlying claim ... but only to the extent[ ] that they are relevant to determining

4    whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret.*

5    *Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (citations omitted).  Within Rule 23's framework,

6    the district court maintains broad discretion over whether to certify a class or subclass.  *See,*

7    *e.g., Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001).

8    **IV.    DISCUSSION**

9        **A.    Rule 23(a)**

10       The Court first addresses whether Heredia has satisfied Rule 23(a)'s requirements of

11   numerosity, commonality, typicality, and adequacy of representation.  Eddie Bauer argues only

12   that Heredia cannot meet her burden to establish the second and third requirements: commonality

13   and typicality.  *See* Opp'n at 2-11.  The Court finds that all of Rule 23(a)'s requirements are

14   satisfied.

15               **i.    Ascertainability and Numerosity**

16       Before analyzing numerosity under Rule 23(a)(1), district courts have required a showing

17   that the proposed class to be certified is ascertainable.  *See Ehret v. Uber Techs., Inc.*, 148 F.

18   Supp. 3d 884, 889–90 (N.D. Cal. 2015) (citing *Xavier v. Philip Morris USA, Inc.*, 787 F.Supp.2d

19   1075, 1089 (N.D.Cal. 2011)).  Ascertainability requires that the class definition be "definite

20   enough so that it is administratively feasible for the court to ascertain whether an individual is a

21   member" before trial, and by reference to "objective criteria." *Daniel F. v. Blue Shield of Cal.*, 305

22   F.R.D. 115, 122 (N.D. Cal. 2014).  This requirement "makes clear on whose rights are merged

23   into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss,

24   and avoids subsequent litigation over who was in the class in the first place." *Ehret*, 148 F. Supp.

25   at 889 (quoting *Xavier*, 787 F.Supp.2d at 1089).

26       As for numerosity, Rule 23(a)(1) requires the proposed class to be "so numerous that

27   joinder of all members is impracticable." "'Impracticability' does not mean 'impossibility,' but

28   only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs*

United States District Court
Northern District of California

8

*Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964) (internal citation omitted).  "While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *see also Ehret*, 148 F. Supp. 3d at 890.

Although Eddie Bauer does not challenge ascertainability or numerosity, the Court addresses these requirements and finds that they are met based on Eddie Bauer's own records.  In response to Heredia's interrogatories, Eddie Bauer identified approximately 1,086 non-exempt retail store employees who belong to the Class.  *See* Agnew Decl. ¶ 2; Heredia Evid. Exh. 1 at 2. All of these class members were subject to the Personal Property Inspection Policy and can be identified through Eddie Bauer's employee records.  Although "[t]hat alone is not enough to recover damages…it is a good, clean, ascertainable group." *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 522 (N.D. Cal. 2015).  For the foregoing reasons, the Court finds that membership in the class that Heredia seeks to certify is objectively ascertainable and sufficiently numerous.

### ii.     Commonality

Eddie Bauer does challenge Heredia's ability to establish that there are "questions of law or fact common to the class" as required to certify the class under Rule 23(a)(2).  *See* Opp'n at 2-9.  "[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1165 (9th Cir. 2014) (citations and internal quotation marks omitted).  In other words, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350) (emphasis in original).

However, not every question of law or fact must be common to the class; "all that Rule 23(a)(2) requires is a single *significant* question of law or fact." *Id.* (internal citations omitted) (emphasis in original).  Proof of commonality under Rule 23(a) is "less rigorous" than the related

9

preponderance standard under Rule 23(b)(3). *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–20 (9th Cir.1998); *Mazza,* 666 F.3d at 589. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon,* 150 F.3d at 1019.

The Court finds that common questions of law and fact that are susceptible to class-wide determination exist in this case, the answers to which will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.  Eddie Bauer's written policies make clear that "[a]ll associates must have their handbags, packages, briefcases, backpacks and other parcels, inspected by a member of store management whenever they leave the store…for any reason." *See* Long Depo. Exh. 7-9.  This policy is clearly silent on whether the Personal Property Inspection should be performed before or after an employee clocks out for the day, and that question must be resolved in order to determine whether nonexempt employees were not, and should have been, compensated for that time.

In light of Eddie Bauer's written policies as well as the submitted evidence, the Court agrees with Heredia that at least two common questions exist, including: (1) whether Eddie Bauer's policy and practice was to mandate that security checks be performed off-the-clock; and, if so, (2) whether time spent by employees off-the-clock for security checks should be deemed as hours worked and thus compensated as wages. *See* Mot. at 16.

Eddie Bauer argues that Heredia has not demonstrated that the class members have suffered a common injury because there is no liability for some employees—i.e. those who made the personal choice not to carry a bag to work.  *See* Opp'n at 2 (citing *Dukes*, 564 U.S. at 349–50) ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury").  Eddie Bauer's argument that there is no common unlawful policy establishing liability for the entire class is unavailing.  The written Personal Property Inspection Policy clearly applies to *all* non-exempt retail employees at Eddie Bauer stores in California.  The fact that Eddie Bauer's uniform written policy across all of its stores applied only to employees who carried packages capable of concealing merchandise does not defeat class certification on commonality.

In *Frlekin v. Apple Inc.*, the court granted class certification under similar factual circumstances where Apple required all employees "who left the premises with a bag" to submit to

a security inspection.  309 F.R.D. 518, 519 (N.D. Cal. 2015).  Apple argued that not all employees brought bags to work, and that the bag-search policy was not enforced at all stores at all times due to manager discretion.  *Id*. at 525.  Nevertheless, the court certified the class, holding that Apple's "state-wide written policy…will serve as a common method of proof for all 52 California stores." *Id*.  The *Frlekin* court went on to aptly explain that if the case went to trial, Apple would be allowed to explain its own written policy to the jury, but that the issue resolves itself anyway because "recovery will be allowed only for those individuals who prove they stood in line long enough to deserve compensation." *Id*.

In support of its position, Eddie Bauer relies heavily on a case that the *Frlekin* court "easily distinguish[ed]." *Id*. at 525 n.3.  In *Quinlan v. Macy's Corp. Servs., Inc.*, which Eddie Bauer argues is dispositive, Macy's security check policy required Loss Prevention personnel to conduct *random* searches of retail employees' personal belongings "at varying times and locations, and, under some circumstances, to search some associates but not others." No. CV1200737DDPJCX, 2013 WL 11091572, at *1 (C.D. Cal. Aug. 22, 2013).  Macy's managers would "implement different strategies not only in the different Macy's locations, but even within the same store, depending on the time of day, day of the week, season, level of traffic inside the store, and other factors." *Id*. at *4.  Thus, under Macy's policy, there was "no guarantee that all employees will actually be searched." *Id*.  Thus, the court denied class certification in part because it was not feasible to determine which purported class members were actually searched. *Id*. at *5 ("The 84,000 purported members of the proposed class share little in common beyond their employment at Macy's. While all class members were subject in name to the same search policy, the very nature of that random inspection policy was such that it varied from store to store and day to day.")

As the *Frlekin* court observed, the facts of *Quinlan* did not reveal a company-wide policy that would give rise to liability for all class members.  309 F.R.D. at 525 n.3.[2]  Here, Eddie

---

[2] *Ogiamien v. Nordstrom, Inc.*, relied on by Eddie Bauer, is also distinguishable in this respect.  In that case, Nordstrom presented overwhelming evidence that its bag check policy was not mandatory but was random in design and in practice. No. 2:13-CV-05639-ODW, 2015 WL 773939, at *5 (C.D. Cal. Feb. 24, 2015).

United States District Court
Northern District of California

Bauer's written security inspection policy plainly applies to "all associates" whenever the associate "leave[s] the store for any reason." SOP at 2; *see* Long Depo. Exh. 7-9.  Unlike managers at Macy's, Eddie Bauer store managers lacked discretion to vary from the policy. *See* Long Depo. 13:4-6; 55:22-24.  For these reasons, Eddie Bauer cannot defeat class certification on the basis that not every employee carried a bag or container capable of concealing merchandise every day.  This case remains capable of class-wide resolution.

Eddie Bauer also ignores evidence that even a container as small as a wallet or keychain could be searched under the Personal Property Inspection Policy.  *See* Heredia Depo. 36:19-24, 37:19-38:14; 43:12-24; *see also* Long Depo. 66:8-19.  Moreover, the evidence suggests that employees wearing coats or jackets were required to "shake" their jackets to show the managers that the employees were not concealing merchandise. *See* Heredia Decl. ¶ 4; Heredia Depo. 101:18-25, Long Depo. 65:6-10, 66:18-19.  There is also evidence that, at least at the Gilroy location, employees had to pat themselves down to show the managers that they did not have any merchandise in their pockets. *See* Heredia Depo. 42:3-43:7.

Heredia testified that even if an employee was not carrying a bag or other container, the employee would still have to let the manager—who may be preoccupied with a customer—know that the employee was leaving the store.  *See* Heredia Depo. 44:18-45:18.  The employee would have to "follow [the manager] around the store" so that the manager could see if the employee was okay to go.  *Id*. 44:21-24.  Heredia further testified that the store managers stated that employees were required to clock out *before* looking for the manager.  *Id*. 45:12-18.  Thus, the evidence at this stage actually suggests that Eddie Bauer's security inspection policy was implemented broadly and did not exclusively apply to employees carrying large bags or backpacks.  Eddie Bauer also offers no evidence regarding the number of employees who would never be impacted by the security inspection policy.  Indeed, it seems likely from Heredia's evidence that nearly all employees were subject to a security inspection at some point during their employment. Certainly, no group of employees was excluded on an ongoing basis.

Finally, Eddie Bauer argues that Heredia cannot establish commonality under the facts of this case because Eddie Bauer's policies *allow* security inspections to be performed on-the-clock.

12

United States District Court
Northern District of California

1    *See* Opp'n at 6.  This argument itself is an answer to the common question: whether Eddie Bauer's

2    policy and practice was to mandate that security checks be performed off-the-clock.  Of course,

3    the parties disagree on the answer to this question, but that does not preclude a finding of

4    commonality under Rule 23(a)(2).

5        As discussed above, Eddie Bauer's written policy is silent on whether the inspections

6    occur before or after an employee clocks out.  Yet Eddie Bauer insists that any "common-sense

7    reading" of the policies makes clear that employees remain clocked-in while waiting for a

8    manager and during the bag check itself.  *See* Opp'n at 6.  The Court disagrees with Eddie Bauer's

9    strained reading of its policies.  Although Long testified that it would be *possible* to still be in

10   compliance with Eddie Bauer's written policies if the security inspection was conducted next to

11   the time clock prior to the employee clocking out, there is no evidence that the written policies

12   require a specific clocking-out sequence one way or the other.  *See* Long Depo. 114:10-19.  Thus,

13   whether Eddie Bauer's policies required security checks to be conducted off-the-clock remains a

14   common question capable of generating common answers.  *See Abdullah*, 731 F.3d at 957

15   (quoting *Dukes*, 131 S. Ct. at 2551).

16       Eddie Bauer presents further evidence to support its argument that security inspections

17   were to be performed on-the-clock, including that (1) time clocks are located at the front of its

18   stores; (2) managers are trained and required to conduct personal property checks while employees

19   are still clocked-in; and (3) Eddie Bauer's policies prohibiting off-the-clock work apply to time

20   spent in security inspections.  *See* Opp'n at 7-9.  This additional evidence may help Eddie Bauer at

21   trial or on summary judgment, but it does not defeat class certification.

22       *Hubbs v. Big Lots Stores, Inc.* does not help Eddie Bauer at this juncture, as it dealt with a

23   bag check policy that was not consistently implemented across stores.  2017 WL 2304754 (C.D.

24   Cal. May 23, 2017).  Despite a uniform security inspection policy, the parties in *Hubbs* presented

25   evidence that "not all stores conduct[ed] bag checks." *Id*. at *9.  Among other reasons, the plaintiff

26   in *Hubbs* was not able to certify the class because she did not present "sufficient evidence to show

27   that there was a common and consistent policy among Defendants to subject all employees at all

28   of their stores to off-the-clock bag checks." *Id*.  The plaintiff had, at most, presented evidence

supporting the position that "managers at certain stores may have required off-the-clock bag checks" which the court held was "not sufficient to warrant certification." *Id.*  In contrast, Heredia has demonstrated the existence of a uniform policy at Eddie Bauer that applies to all employees in all California stores, and she has satisfied Rule 23(a)(2)'s commonality prerequisite.

The dispute over what Eddie Bauer's security inspection policy actually required, or should be interpreted to require, is actually a common question that is "capable of resolution by common proof" sufficient to meet the commonality requirement of Rule 23(a)(2). *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 604–05 (C.D. Cal. 2015); *see also Diller v. Under Armour Retail, Inc. et al.*, Santa Clara County Superior Court Case No. 1-14-CV-265729, RJN Exh. A.  The overarching common questions in this case are whether Eddie Bauer's policy and practice required security checks to be performed off-the-clock; and, if so, whether such time is compensable under California law.

### iii. Typicality

Eddie Bauer also challenges Heredia's showing of typicality pursuant to Rule 23(a)(3).  To satisfy the typicality requirement, Heredia's claims must be typical of those advanced by the class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality is "directed to ensuring that plaintiffs are proper parties to proceed with the suit." *Reis v. Arizona Beverages USA*, 287 F.R.D. 523, 539 (N.D. Cal. 2012).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotation marks omitted).  The standard is permissive, requiring only that the claims of the class representatives are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Eddie Bauer argues that Heredia's failure to know the contents of Eddie Bauer's written security inspection policies means that her claims and defenses are not typical of the claims or defenses of the class. *See* Opp'n at 10 (citing *Hanlon*, 150 F.3d at 1020).  Heredia's testimony at her deposition makes clear that she was orally informed of Eddie Bauer's security inspection

14

policies by her store managers, and she did not read the written policies herself. *See* Heredia Depo. 49:8-50:1.  Heredia concedes in her reply that her knowledge was limited to what she observed as an employee and her understanding of the policies was based on what management communicated to her.  *See* Reply at 13.  Yet Eddie Bauer argues that Heredia's experiences are at odds with Eddie Bauer's official policies, and thus her claims are not typical. *See* Opp'n at 11.

Notwithstanding Eddie Bauer's creative argument against certification, the Court finds that typicality is satisfied.  As a non-exempt retail store employee at Eddie Bauer, Heredia was subject to the same written security inspection policy as the other class members.  Thus, her injury is the same as that of the absent class members: they all allege that they were not paid for time spent waiting for managers to conduct the security inspection, and time spent undergoing the inspection. *See, e.g.*, *Rodriguez v. Nike Retail Servs., Inc.*, No. 5:14-CV-01508-BLF, 2016 WL 8729923, at *10 (N.D. Cal. Aug. 19, 2016).  Even if she was unaware of its literal contents, Heredia's alleged injury was caused by Eddie Bauer's Personal Property Inspection Policy, which applied to all class members.  *See Wolin*, 617 F.3d at 1175.

Eddie Bauer does not cite to any authority for its proposition that a class representative's failure to know the contents of a uniform policy or to know the experiences of other class members renders his or her claims atypical.  Rather, Eddie Bauer again relies on *Quinlan*, which is distinguished above on the grounds that Macy's security inspection policy was *randomized*.  2013 WL 11091572, at *2.  In that case, "Macy's applied a different package search policy to [the plaintiff] than to many, if not most, of the other 84,000 members of the purported class." *Id*.  Here, Heredia's claims are typical, if not identical, to those of the class because they were all equally subject to the same uniform security inspection policy.  Heredia has an incentive to litigate the class claims and to prove Eddie Bauer's liability because her claims, like those of the class, rise and fall with the answers to the common questions discussed above.

### iv. Adequacy

Although Heredia's adequacy is not challenged, the Court briefly addresses this requirement.  Adequacy requires the plaintiff to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "To determine whether named plaintiffs will adequately represent

a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Id.* (citation omitted).

There is no evidence of any conflict between Heredia or her counsel and the class members, nor is there any indication that Heredia and her counsel cannot vigorously prosecute this action on behalf of the class.  The evidence suggests that Heredia is an adequate representative and her counsel is extremely competent and experienced in wage and hour class actions.  *See, e.g.*, Heredia Decl. ¶¶ 7, 8; Agnew Decl. ¶¶ 2-4, 6-12; Declaration of Larry W. Lee ("Lee Decl.") ¶¶ 3-8.  The Court finds that Heredia and her counsel satisfy Rule 23(a)(4)'s adequacy requirement.

For the foregoing reasons, Heredia has satisfied all of the requirements of Rule 23(a).

**B.      Rule 23(b)(3)**

Satisfying Rule 23(a) is only half of the battle.  Heredia must also satisfy "through evidentiary proof at least one of the provisions of Rule 23(b)." *Mazza*, 666 F.3d at 588.  Heredia moves to satisfy a class pursuant to Rule 23(b)(3), and thus she must meet the predominance and superiority requirements in order to certify the proposed class. *See* Mot. at 2, 24-25.  Specifically, Rule 23(b)(3) requires Heredia to establish that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Eddie Bauer challenges Heredia's showing with respect to both predominance and superiority.

**i.      Predominance**

The predominance inquiry tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation.  *See Amchem Prod, Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Hanlon*, 150 F.3d at 1022.  The requirement is more demanding than Rule 23(a)

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    and its commonality requirement, because a plaintiff must show not only that common questions

2    of law or fact exist but that they actually *predominate* over questions only affecting individual

3    class members.  *See Comcast*, 569 U.S. at 34.  The Court must therefore take a "close look" at

4    whether common questions predominate over individual ones in this case.

5          Eddie Bauer argues that individualized issues predominate because its security inspection

6    policies (1) only applied to employees who carried a bag; (2) only permitted security inspections

7    to occur when a bag was large enough to conceal company merchandise; (3) did not extend to

8    jackets, clothing, or other visual inspections of employees without bags; (4) permitted employees

9    without a bag to leave the store immediately without an inspection; and (5) permitted employees

10   to avoid inspection if they chose to exit without a bag.  *See* Opp'n at 12-18.  Heredia responds that

11   these individualized inquiries are irrelevant to class certification on the issue of Eddie Bauer's

12   liability for its uniform policy, and are at most relevant to damages which could be resolved

13   through representative sampling, schedules, pay records, surveys, and testimony.  *See* Reply at 14.

14         Relying on *Ogiamien v. Nordstrom, Inc.*, Eddie Bauer also contends that individualized

15   issues regarding which employees carried bags on which days at which stores predominate

16   common questions.  *Id*. at 18.  In *Ogiamien*, the court denied class certification because

17   Nordstrom's bag check policy was random by design and in practice such that "not every

18   employee carried a bag and not every employee with a bag was checked." No. 2:13-CV-05639-

19   ODW, 2015 WL 773939, at *5 (C.D. Cal. Feb. 24, 2015).  Eddie Bauer emphasizes *Ogiamien* to

20   the extent it held individualized inquiries of which employees carried a bag to work on which days

21   precluded a finding of predominance.  Yet Eddie Bauer ignores the fact that Nordstrom's policy

22   was randomly applied, resulting in a large number of employees *who carried bags* but were never

23   searched and thus never harmed by the policy.  *Id*.

24         Here, there is no evidence that Eddie Bauer's policy was anything but uniformly applied to

25   all employees in all of its stores, and there *is* evidence that the policy was broadly implemented

26   and extended to employees' jackets, wallets, and keychains, or even a visual "check" with the

27   manager before the employee departed the store.  Thus, the Court is not convinced that

28   individualized issues preclude class certification under these circumstances.  The common

1    questions of whether Eddie Bauer's uniform security inspection policy required employees to be

2    off-the-clock, and if so, whether that time was compensable, predominate any individualized

3    inquiries.  *See In re AutoZone Litig.*, 289 F.R.D. 526, 533 (N.D. Cal. 2012) (citing *Brinker Rest.*

4    *Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that a uniform policy

5    consistently applied to a group of employees is in violation of the wage and hour laws are of the

6    sort routinely, and properly, found suitable for class treatment.").

7            Eddie Bauer urges the Court to find that these individualized inquiries go to

8    ascertainability of the class and liability, and not solely to damages.  *See* Opp'n at 19.  As

9    explained above, the authority that Eddie Bauer relies on is distinguishable, and which employees

10   actually carried a container to work, waited for a manager, or submitted to a security inspection

11   pursuant to the uniform policy is a damages question that can be resolved after class certification

12   or a determination of liability.  *See Frlekin*, 309 F.R.D. at 526 ("In the event that Apple loses on

13   the merits, it will be necessary, as Apple points out, to litigate the issue of who actually stood in

14   line and for how long.")

15          Both parties and the Court are well aware that the *Frlekin* case ultimately resulted in

16   summary judgment for Apple. 2015 WL 6851424, at **9 (N.D. Cal. Nov. 7, 2015) (finding that

17   "our plaintiffs could all freely choose not to bring bags to work, thereby avoiding Apple's

18   restrictions during exit searches. That free choice is fatal to their claims.").  The Court will not

19   speculate as to the outcome of *Frlekin* on appeal, or the future viability of the *de minimis* defense,

20   but notes that the developing law in this area will surely have an impact on summary judgment in

21   this case.  It does not, however, preclude class certification of Heredia's claims at this stage.[3]

22          **ii.      Superiority**

23          Under Rule 23(b)(3), Heredia must also show that class treatment is superior to other

24   available methods of resolving the claims.  Eddie Bauer argues that the class is not manageable or

25   well-suited for class certification because its time records will be useless in measuring alleged off-

26

27   _____

     [3] Eddie Bauer's argument that Heredia cannot show that common questions predominate because
28   security inspections are not required to be performed off-the-clock, is repetitive of the
     commonality arguments discussed above, and no more persuasive in the context of Rule 23(b)(3).

United States District Court
Northern District of California

the-clock work by its employees. *See* Opp'n at 24.  Nevertheless, the Court finds that a class action is superior in this case due to the common policies and practices that are most efficiently litigated on a class-wide basis.  Every employee's individual case would need to answer the same common questions: whether Eddie Bauer's policies mandated that security inspections be conducted off-the-clock, and whether such off-the-clock time should have been compensated under California law.  Despite its manageability concerns, Eddie Bauer does not address the numerous cases that have certified classes involving time spent by employees waiting or working off-the-clock.  *See Rodriguez*, No. 5:14-CV-01508-BLF, 2016 WL 8729923, at *11 (N.D. Cal. Aug. 19, 2016); *Frlekin v. Apple Inc.*, 309 F.R.D. 518 (N.D. Cal. 2015); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 593 (C.D. Cal. 2015); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008); *Kurihara v. Best Buy Co.*, Case No. C 06-01884 MHP, 2007 WL 2501698, at *1 (N.D. Cal. Aug. 30, 2007).

## V.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Heredia's motion for class certification is GRANTED.  "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). The Court thus certifies the class of:

> All current and former non-exempt retail store employees who were employed by Defendant in the State of California at any time from September 28, 2012, through the present.

The Court certifies as appropriate for class treatment only Heredia's First Cause of Action (unpaid minimum wages), Second Cause of Action (unpaid overtime compensation), Fifth Cause of Action (wage statement violations), and Seventh Cause of Action (UCL violation), as alleged in the Complaint.  The Court also certifies Heredia as class representative and her counsel of record as class counsel.

Dated: January 10, 2018

_____
BETH LABSON FREEMAN
United States District Judge

19