UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE HEREDIA,<br><br>    Plaintiff,<br><br>v.<br><br>EDDIE BAUER LLC,<br><br>    Defendant. | Case No. 16-cv-06236-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR DECERTIFICATION; TERMINATING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST THE CERTIFIED CLASS AS MOOT; DENYING PLAINTIFF'S MOTION TO MODIFY CLASS DEFINITION**<br><br>[Re: ECF 60; 51; 71] |

    This matter is a wage and hour class action against the well-known outdoor lifestyle brand Eddie Bauer ("Defendant"), alleging that the company failed to compensate its hourly employees for time spent undergoing off-the-clock "exit inspections" of employees' personal belongings before leaving the store. Plaintiff, Stephanie Heredia, worked as a sales associate at an Eddie Bauer retail store in Gilroy, California from November 2013 to March 2016. During that time, she alleges that she was required to undergo inspections of her personal belongings—otherwise known as "bag checks" or "security inspections"—whenever she left the store. On January 10, 2018, the Court certified a class of "[a]ll current and former non-exempt retail store employees who were employed by Defendant in the State of California at any time from September 28, 2012, through the present." Order Granting Plaintiff's Motion for Class Certification ("Cert. Order") at 19, ECF 33.

    Before the Court are three related motions: (1) Defendant's Motion for Summary Judgment Against the Certified Class (ECF 51), (2) Defendant's Motion for Decertification (ECF 60), and (3) Plaintiff's Motion to Modify Class Definition (ECF 71). The Court heard oral arguments on Defendant's Motion for Summary Judgment on September 12, 2019. The Court also held a hearing

1  on Defendant's Motion for Decertification on December 5, 2019. The Court finds Plaintiff's Motion
2  to Modify Class Definition appropriate for disposition without oral argument. *See* Civ. L.R. 7-1(b).
3  Accordingly, the hearing set for January 23, 2020 is VACATED.

For the reasons stated in Section II below, the Court GRANTS Defendant's Motion for Decertification. With the class decertified, Defendant's Motion for Summary Judgment Against the Certified Class is TERMINATED AS MOOT. Additionally, Plaintiff's Motion to Modify Class Definition is DENIED for the reasons stated in Section IV below.

**I.  BACKGROUND**

Because Eddie Bauer's retail stores carry a variety of merchandise that is susceptible to theft, Eddie Bauer requires all of its retail employees to submit to a security inspection before exiting the store, whether the employee's departure is for a meal break, rest break, or to leave at the end of a shift. *See* Keith Long Deposition ("Long Dep.") 53:9-15, 55:18-56:2, 65:14-66:7, ECF 29-4, Exh. 4. At Eddie Bauer, this security inspection is known as "Personal Property Inspection Policy," and applies to all retail employees who carry a bag or container that could be used to conceal company merchandise. *See* Long Dep. 55:18-56:2, 58:1-15; Exh. 7 (Store Associate Resource Guide, updated August 2016); Exh. 8 (SOP regarding Package/Personal Property Checks, dated November 10, 2016), ECF 29-4. In relevant parts, the written policy provides:

> All associates must have their handbags, packages, briefcases, backpacks and other parcels, inspected by a member of store management whenever they leave the store. Package checks are also completed for breaks and meal periods, or whenever associates leave the store for any reason.

Long Dep., Exh. 8. It is undisputed that Eddie Bauer's written policies are silent on whether the employees must clock out before or after undergoing the required security inspections. *See* Defendant's Motion for Decertification ("Decert. Mot.") at 2, ECF 60-1; Opposition to Motion for Decertification ("Decert. Opp'n") at 1, ECF 65. The parties dispute, however, whether in practice, Eddie Bauer employees undergo inspection while off the clock. *See* Decert. Mot. at 1-2; Decert. Opp'n at 1-2.

At the time the Court certified the class, only two depositions had been conducted: (1)

2

Heredia and (2) Eddie Bauer's FRCP 30(b)(6) witness, Keith Long, who was designated to testify to topics related to Eddie Bauer's security inspection policies. Cert. Order at 2. Evidence submitted for the motion to certify the class showed that Heredia worked as a sales associate at Eddie Bauer's Gilroy store from November 2013 to March 26, 2016. *See* Declaration of Stephanie Heredia ("Heredia Decl.") ¶ 2, ECF 29-4, Exh. 5. During her deposition, Heredia explained that she always clocked out before waiting for a manager to become available to perform the security check and then undergoing the inspection. Heredia Deposition ("Heredia Dep.") 74:19-22; 118:24-119:3, ECF 29-4, Exh. 3. According to Heredia, "[e]verbody waited until after they clocked out" to have their bags checked. Heredia Dep. 46:19-22. Heredia testified that her managers instructed her to clock out and wait at the front of the store before the manager would conduct a bag check. Heredia Decl. ¶ 5; *see also* Heredia Dep. 55:11-17, 123:22-25, 126:6-13. On the other hand, Long testified during his deposition that it is Eddie Bauer's policy to train managers to conduct personal property checks while employees are still clocked in. Long Dep. 77:14-20.

Based on this limited record, in January 2018, the Court certified a class of "All current and former non-exempt retail store employees who were employed by Defendant in the State of California at any time from September 28, 2012, through the present." Cert. Order at 19. The Court found that at least two common questions exist: (1) whether Eddie Bauer's policy and practice was to mandate that security checks be performed off-the-clock; and, if so, (2) whether time spent by employees off-the-clock for security checks should be deemed as hours worked and thus compensated as wages. *Id.* at 10. The Court came to that conclusion because (1) the evidence showed that Eddie Bauer's written policy applies to all non-exempt employees, (2) Heredia demonstrated the existence of a uniform policy applying to all employees in California, and (3) Eddie Bauer offered no evidence regarding the actual practice at the various stores regarding on-the-clock or off-the-clock bag checks. *Id.* at 12-14.

Shortly thereafter, Eddie Bauer filed a motion for reconsideration. ECF 36. The Court denied the motion and rejected Eddie Bauer's arguments that some class members did not share Heredia's injury because Eddie Bauer had presented the Court with "*no* evidence of any of these 'on-the-clock' employees." ECF 37 at 4, 7-8. The Court further noted that "[s]hould Eddie Bauer

acquire such evidence of class members who were subject to bag checks before they clocked out, it could present their experiences to the Court in a motion to decertify the class." *Id.* at 8.

The record has significantly developed since then. First, Eddie Bauer's expert, Robert W. Crandall, conducted a "time and motion" study that included video observation of store operations for 114 full days, totaling over 1,482 hours in 7 Eddie Bauer California stores (50% of the Eddie Bauer stores in California). Declaration of Robert W. Crandall Regarding "Time and Motion" Study ("Crandall Decl.") ¶¶ 90; 58, Dkt. No. 51-3. Of the 620 exits captured, 137 exits captured all aspects of the exit inspection—waiting time, bag check, visual inspection, other time, and clocking out. *Id.* ¶¶ 94-100. Of those 137 fully-observed exits, 80.3% were on the clock and 19.7% were off the clock. *Id.* ¶¶ 95-96. Of the 620 exits captured by the Crandall Study, 273 exits captured some aspects of the exit inspection. *Id.* ¶¶ 101-108. Based on the 273 exits where some aspects of the exit inspection were observed in the study, 172 exits—or 63.0%—showed that the employees had no waiting time, no bag check, and no visual inspection because the employee left the store without carrying a bag or other item subject to inspection. *Id.* ¶ 106.

Second, the parties agreed on a procedure for selecting a representative sample of class members. *See* ECF 41 § IV.A. The class members who were deposed include current or former Eddie Bauer employees who worked for the company during every year of the certified class period—2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019. Declaration of Michael Afar in Support of Defendant's Motion for Decertification ("Afar Decl.") ¶ 8, ECF 60-2. Eddie Bauer's expert, Mr. Crandall, summarized the deponents' testimony regarding on-the-clock/off-the-clock inspections in a table reproduced below[1]:

---

[1] Heredia does not meaningfully dispute Mr. Crandall's analysis and has reproduced and referenced Table 2 of his Supplemental Declaration in several of her briefs. *See e.g.,* Decert. Opp'n at 11; Plaintiff's Opposition to Defendant's Motion for Summary Judgment Against the Certified Class at 16-17, ECF 54; Plaintiff's Motion to Modify Class Definition at 3, ECF 71.

4

| TABLE 2 | | |
| --- | --- | --- |
| Testimony Regarding Frequency Of Exit Inspections That Occurred On The Clock | | |
| Class Member | On The Clock | Off The Clock |
| Katie Anderson | 100% | 0% |
| Ashley Beck | 85% | 15% |
| Christine Brown | 25% | 75% |
| Colleen Cash | 10% | 90% |
| Katie Cheetham | 0% | 100% |
| Teresa Kober (Ameluxen) | 0% | 100% |
| Elicia Maurer | 85% | 15% |
| Walter Montti | 7.2% | 92.8% |
| Joyce O'Brien | 0% | 100% |
| Marta Price | 0% | 100% |
| Michelle Pringle | 99% | 1% |
| Valerie Ragueneau | 98.7% | 1.3% |
| Jean-Jacques Reibel | 100% | 0% |
| Sheryl Saporsantos | 0% | 100% |

Supplemental Declaration of Robert W. Crandall Regarding Class Member Depositions ("Crandall Supp. Decl.") ¶ 113, Table 2, ECF 51-4. Upon analyzing the deposition testimony, Mr. Crandall concluded that the weighted total of exit inspections conducted on the clock is 54.2% of all shifts. *Id.* ¶ 113.

Based on this new record, Eddie Bauer has challenged the certified class in two motions: (1) Motion for Summary Judgment Against the Certified Class and (2) Motion for Decertification. ECF 51; 60. Heredia opposes both motions and has filed her own motion seeking to modify the class definition. *See* ECF 54; 65; 71.

## II. EDDIE BAUER'S MOTION FOR DECERTIFICATION

Eddie Bauer seeks to decertify the class because "the new evidence shows that there are no common questions or common answers" regarding off-the-clock security inspections at its stores. Decert. Mot. at 1. Eddie Bauer relies on its expert's "time and motion study," which shows that 80.3% of the observed exit inspections occur on the clock. *Id.* at 3-5. Eddie Bauer also relies on the outcome of the stipulated sample of class member depositions, which showed that 54.2% of the

weighted total of exit inspections occurred on the clock. *Id.* at 5-8.

Heredia provides no arguments as to why the class, as-certified, should be maintained. *See generally* Decert. Opp'n. Instead, Heredia proposes to modify and narrow the class period to end on December 31, 2016. Decert. Opp'n at 1. Heredia has also separately filed a motion to modify the class definition. Motion to Modify Class Definition ("Mot. to Modify"), ECF 71. Thus, Heredia has effectively conceded that based on the current record, the certified class cannot move forward to trial. The Court first decides whether the certified class should be decertified. The Court will then address Heredia's proposed class definition in Section IV below.

### A. Legal Standard

"Even after a certification order is entered, the [Court] remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). "A district court may exercise its sound discretion to decertify a class." *Ser Lao* v. *H&M Hennes & Mauritz, L.P.*, No. 5:16-CV-00333-EJD, 2019 WL 7312623, at *2 (N.D. Cal. Dec. 30, 2019). "The standard used by the courts in reviewing a motion to decertify is the same as the standard when it considered Plaintiffs' certification motions." *Ries v. Ariz. Beverages USA LLC*, No. 10–01139 RS, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013). Certification orders, however, are not altered "'except for good cause,' such as 'discovery of new facts or changes in the parties or in the substantive or procedural law.'" *Morales, et al. v. Kraft Foods Grp., Inc.*, 2017 WL 2598556, at *20 (C.D. Cal. June 9, 2017) (quoting *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2016 WL 6070490, at *2 (N.D. Cal. Oct. 17, 2016)).

Rule 23(a) requires that (1) the members of the class must be so numerous that joinder is impracticable, (2) there must be questions of law or fact common to the class, (3) the representative's claims and defenses must be typical of the class members' claims and defenses, and (4) the representative must fairly and adequately protect the interests of the class. The class must also meet one of the requirements of Rule 23(b). Here, Heredia seeks to maintain the Class subject to Rule 23(b)(3)'s requirements that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."

**B. Discussion**

The Court agrees with Eddie Bauer—and Heredia concedes—that the certified class cannot be maintained based on the current record, because the class members did not experience a uniform policy of off-the-clock exit inspections.

**1. No Uniform Policy to Undergo Exit Inspection Off the Clock**

Eddie Bauer argues that the class should be decertified because the now-available evidence shows the company does not have a uniform policy or practice on whether exit inspections are to be performed on or off the clock. Decert. Mot. at 11-12. The Court agrees. The Court certified the class based on the premise (supported by the record at the time) that "Heredia's claims are typical, if not identical, to those of the class because they were all equally subject to the same uniform security inspection policy." Cert. Order at 15. That premise is no longer supported by the record. It is undisputed that Eddie Bauer's written security inspection policy, which applies to all non-exempt employees, is silent on whether the exit inspections should be performed on the clock or off the clock. *See* Decert. Mot. at 2; Decert. Opp'n at 1; Long Dep., Exh. 8. Thus, the Court must consider whether, in practice, Eddie Bauer employees experienced a uniform policy across California stores. The current record shows that the answer is: no.

The record now shows that some class members (the majority) experienced exit inspections on the clock and some class members (the minority) experienced exit inspections off the clock. Mr. Crandall's "time and motion" study—not contradicted or disputed by Heredia—demonstrates that over 80% of the fully-observed exit inspections (across 7 Eddie Bauer stores) were conducted on the clock. Crandall Decl. ¶¶ 95-96. The deposition testimony of a mutually-selected group of Eddie Bauer current and former employees also showed that over half of the exit inspections took place while employees were still clocked in. Crandall Supp. Decl. ¶ 113. For example, Ashley Beck, the Assistant Store Manager at the Fig Garden store, testified that "it's Eddie Bauer's policy to have bag checks occur on the clock." Beck Dep., 35:21-23; Afar Decl. ¶ 11, Exh. C. In practice, Ms. Beck testified that 85% of her bag checks were on the clock. *Id.* 51:22-24. Michelle Pringle, an Assistant Store Manager at Roseville, testified that "Eddie Bauer's policy is that bag checks occur

7

on the clock" and "bag checks have been on the clock." Pringle Dep., 20:12-13, 16- 17; Afar Decl. ¶ 20, Exh. L. On the other hand, Joyce O'Brien, who worked in Sacramento, Citrus Heights, and Roseville stores, testified that in her experience, all of bag checks were performed off the clock. O'Brien Dep. 70:2-7; Afar Decl. ¶ 18, Exh. J.

This record supports decertification. "It is doubtful that the Court would have certified the class [when it did] had it understood that [Eddie Bauer] did not have a single uniform policy in place" because "[i]t is no longer accurate to say that this case involves 'a uniform policy consistently applied' throughout the class period." *In re Autozone, Inc. Wage and Hour Employment Practices Litig.*, 2016 WL 4208200 at *10 (N.D. Cal. Aug. 10, 2016) (decertifying a class because there was no common policy in place during the class period); *see also Hubbs v. Big Lots Stores, Inc.*, 2017 WL 2304754 at *9 (C.D. Cal. May 23, 2017) (denying class certification where plaintiffs failed to present "sufficient evidence to show that there was a common and consistent policy among Defendants to subject all employees at all of their stores to off-the-clock bag checks").

### 2. The Class Is Not Ascertainable

Eddie Bauer also argues that in the absence of a uniform policy, the certified class is not ascertainable. Decert. Mot. at 12. The Court agrees. A class is ascertainable if it is "administratively feasible for the court to ascertain whether an individual is a member" by reference to "objective criteria." Cert. Order at 8 (citing *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 122 (N.D. Cal. 2014)). In its certification order, the Court found that the class was ascertainable because all 1,086 non-exempt retail store employees, identified through Eddie Bauer's employee record, were subject to the Personal Property Inspection Policy. Cert. Order at 9. Based on the current record, however, even though all employees are subject to the same written policy, it is clear that, in practice, they undergo exit inspections differently – most on the clock and some off the clock. Thus, it is impossible to know, without individualized inquiries, which employees have undergone exit inspections off the clock and were subjected to uncompensated time. *See Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (finding a class not ascertainable because it included members who had "no injury and no standing to sue"); *In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 545 (N.D. Cal. 2012)

(finding a class definition that included employees who were not injured and had "no standing to sue" overbroad and thus, not ascertainable).

### 3. No Common Injury

Next, Eddie Bauer argues that decertification is warranted because claims of class members cannot be resolved "in one stroke" and the class includes employees who did not suffer any harm or injury. Decert. Mot. at 13-17. "[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (citations and internal quotation marks omitted). In other words, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

In its certification order, the Court found that two common questions existed: (1) whether Eddie Bauer's policy and practice was to mandate that security checks be performed off-the-clock; and, if so, (2) whether time spent by employees off-the-clock for security checks should be deemed as hours worked and thus compensated as wages. Cert. Order at 10. Under the current record, however, individualized inquiries are required to answer the first certified question because, as discussed, the employees' experience with exit inspections varied significantly. Thus, the question of whether all class members were subject to off-the-clock exit inspections resulting in uncompensated time cannot be resolved in one stroke.

Employee depositions support this conclusion. For example, Ms. Beck testified that to determine whether bag checks are conducted on or off the clock, one must ask each employee individually. Beck Dep., 54:5-9; Afar Decl. ¶ 11, Exh. C. Christine Brown testified that her choice of whether to go through bag inspection before or after clocking out was based on the particular day's circumstances (*i.e.*, the time of day, where she was, and where her manager was). Brown Dep., 54:25-55:4; Afar Decl. ¶ 12, Exh. D. When, as here, an inquiry into each employee's experience is necessary, class certification is improper. *See Koike v. Starbucks Corp.*, 378 F. App'x

9

659, 661 (9th Cir. 2010) ("The district court did not abuse its discretion in finding that individualized factual determinations are required to determine whether class members did in fact engage in off-the-clock work[.]").

Heredia cites several retail "bag check" cases and argues that a "substantial majority of cases support certification." Decert. Opp'n at 14-19. However, all the "bag check" cases Heredia cites are distinguishable because, unlike here, in those cases either the company policy required off-the-clock inspections or the available evidence showed that, in practice, most (if not all) employees experienced off-the-clock inspections. For example, in *Rodriguez v. Nike Retail Servs., Inc.*, the company had a uniform policy that required its employees "to clock out before they go to the store exit to get checked and leave." 2016 WL 8729923, *5 (N.D. Cal. Aug. 19, 2016). Or, in *Chavez v. Converse, Inc.*, the court found that that plaintiff had demonstrated that "most, if not all, Converse stores are set up such that an employee would necessarily be off-the-clock when a bag check occurs." Case No. 15-cv-03746-NC, Dkt. No. 89, at p. 3 (N.D. Cal. Sep. 22, 2016). Similarly, in *Frlekin v. Apple Inc.*, "[b]ecause the employee time-keeping systems were generally kept within the store, employees had to clock out prior to undergoing a search," and thus "as a rule, employees received no compensation for the time involved in the searches." 309 F.R.D. 518, 521 (N.D. Cal. 2015).

At the December 5, 2019 hearing, counsel for Heredia identified *Moore v. Ulta Salon Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015) as the most analogues "bag check" case to the facts present in this matter and argued that it supports maintaining certification. ECF 76, 20:3-21:25. The Court disagrees. First, the Court notes that *Moore* is not binding on this Court and more importantly, does not address the issue presented in Eddie Bauer's motion for decertification – whether a class certification should be maintained when there is significant evidence that most class members did not experience off-the-clock bag checks. Second, *Moore* is factually distinguishable because, unlike here, "the most reasonable reading of [Ulta's] written exit inspection policy indicate[d] that the employee must clock out before his or her bag is checked." *Moore*, 311 F.R.D. at 613; *see also id.* at 595-96 (the New Hire Orientation manual listing "End of Shift Routine" tasks, with "clock out" coming *before* bag checks), 599 (A "Key Corporate Communication"

10

1 directing company managers to "After everyone has punched out, proceed to the front door, complete Exit Inspections in an expeditious manner and leave for the night."). Here, the written policy is undisputedly silent on the issue of on or off the clock inspections. Moreover, although Ulta pointed to variances in the manner exit inspections were conducted across Ulta stores, the evidence provided by both sides indicated that "exit inspections regularly occurred off the clock" and as for the exit inspections as the end of closing sifts, "Defendant's declarants who discussed exit procedures stated, uniformly and without exception, that the inspections occur after the employees have clocked out." *Id.* at 610-11. In this case, the current record shows that most bag checks were conducted on the clock.

Recently, Heredia filed a Notice of New Authority in support of her opposition to Eddie Bauer's motion for decertification. ECF 77. The Court is not persuaded that this new decision supports Heredia's position. In *Ser Lao*, unlike here, there was no dispute that those employees who brought bags to work were inspected off the clock – but the issue was whether those employees *without* bags were subject to uncompensated time for inspections. 2019 WL 7312623, at *2 ("These checks occur after the employees are off the clock.").

Eddie Bauer also argues that (1) "**all** class members must 'have suffered the same injury" and (2) a viable class action "cannot include individuals who have suffered no harm or injury." Decert. Mot. at 13, 15-16. Although the Court disagrees with such broad conclusions, it need not decide this issue because based on the current record (1) this case does not present a close call where the majority of the class members are not harmed and (2) Heredia concedes that the class, as certified, cannot be maintained. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct.")

### 4. Conflicting Evidence and Individualized Inquiries

Finally, Eddie Bauer argues that the conflicting evidence regarding on and off the clock exit inspections warrants decertification. The Court agrees because the now-available record shows that the exit inspections were conducted both on and off the clock throughout the class period – with most inspections taking place on the clock. *See Garcia v. Sun Pac. Farming Co-op, Inc.*, 359 F.

11

App'x 724, 726 (9th Cir. 2009) (affirming denial of class certification where "the record evidence—in particular, the conflicting employee declarations submitted by each party—does not establish common wage and hour practices at [the company], but rather the inconsistent application of the wage and hour laws between and among the various work Crews.") (alterations omitted); *see also Hubbs*, 2017 WL 2304754 at *8 (denying class certification where the parties submitted conflicting declarations as to whether bag checks were on or off the clock).

Based on the current record, at trial, the jury would necessarily have to decide whether each employee experienced uncompensated exit inspections. Class actions are not appropriate where the resolution of the case would require numerous mini trials. *See, e.g., Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 484 (N.D. Cal. 2017) ("Put simply, [i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'").

### C. Conclusion

For the foregoing reasons, the Court finds that based on the current record, the class as certified does not satisfy the Rule 23 requirements. Thus, Defendant's Motion for Decertification is GRANTED.

### D. Plaintiff's Motion to Strike Reply Evidence

At the December 5, 2019 hearing, Heredia moved the Court to strike the evidence submitted in Eddie Bauer's reply in support of its Motion for Decertification, namely the Supplemental Declaration of Mike Barnes (ECF 66-2). ECF 76, 4:18-5:20. The Court has not considered or relied on Mr. Barnes' declaration and thus TERMINATES Plaintiff's motion to strike as MOOT.

### E. Plaintiff's Request for Judicial Notice

In connection with her opposition to Eddie Bauer's Motion for Decertification, Heredia filed a request for judicial notice of (1) Magistrate Judge Nathanael M. Cousins' Order Granting Plaintiff Eric Chavez's Motion for Class Certification in *Chavez v. Converse, Inc.*, 15-cv-03746-NC, Dkt. No. 89 (N.D. Cal. Sept. 22, 2016) and (2) The Order After Hearing on March 18, 2016 in the matter of *Diller v. Under Armour Retail, Inc. et al.*, Santa Clara County Superior Court Case No. 1-14-CV-265729. ECF 65-1. Eddie Bauer does not oppose Heredia's request for judicial notice. Courts may

properly take judicial notice of "matters of public record" that are not "subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The requested documents are properly subject to judicial notice. *See Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 259 (N.D. Cal. 2012). Heredia's request for judicial notice of the above-stated documents is GRANTED.

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST THE CERTIFIED CLASS

In its Motion for Summary Judgment Against the Certified Class, Eddie Bauer relied on Mr. Crandall's "time and motion" study and class member depositions to argue that "the certified class cannot meet its burden to show that all class members were subject to exit inspections off the clock." Defendant's Motion for Summary Judgment Against the Certified Class at 1, 12-16, ECF 51-1. Eddie Bauer further argued that the "the time spent off the clock was not 'regular' because the majority of exit inspections occurred while still on the clock, and the minority of exit inspections off the clock were still merely seconds of time" – which, according to Eddie Bauer, is not compensable under California Supreme Court's decision in *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018), *as modified on denial of reh'g* (Aug. 29, 2018). *Id.* at 1, 17-21.

The certified class against which Eddie Bauer sought summary judgment is now decertified as discussed in Section II of this Order. Thus, all issues presented in Eddie Bauer's motion for summary judgment are resolved and the motion is TERMINATED AS MOOT.[2]

## IV. PLAINTIFF'S MOTION TO MODIFY CLASS DEFINITION

Heredia seeks to modify the class definition (1) in her opposition to Eddie Bauer's Motion for Decertification (ECF 65) and (2) in a Motion to Modify Class Definition (ECF 71). Heredia proposes to redefine the class period to end on December 31, 2016 (instead of through the present). *See* Mot. to Modify at 1. Heredia's proposal is premised on her allegation that "around the beginning of 2017" and in response to the filing of this lawsuit in September 2016, Eddie Bauer changed its

---

[2] The Court notes that Eddie Bauer's motion for summary judgment was filed before the Ninth Circuit decision in *Rodriguez v. Nike Retail Servs.*, Inc., 928 F.3d 810 (9th Cir. 2019), clarifying the application of *Troester*, was issued. To be clear, because the Court has decertified the class, it does not make any findings as to Eddie Bauer's arguments regarding the application of *Troester* to the facts of this case.

13

practice (but not its written policy) to require bag checks to be conducted on the clock. *See id.* at 1-2; 5.

Heredia does not offer any direct evidence of this alleged change in practice but instead relies on certain deposition testimony and two emails from an Eddie Bauer executive (emphasizing that bag checks must be done on the clock) to argue that a change may be inferred. *See* Mot. to Modify at 3-6. For the purposes of deciding Plaintiff's Motion to Modify Class Definition, the Court need not (and does not) decide whether, in fact, Eddie Bauer's practice regarding exit inspection changed. This is because even if Eddie Bauer's bag check practices changed as Heredia suggests, Heredia's proposed redefined class period suffers from the same deficiencies, albeit to a lesser degree, as the class originally certified.

**A.     No Uniform Policy to Undergo Exit Inspection Off the Clock, even before 2017**

Eddie Bauer's policy was far from "uniform" even before January 2017. The Court recognizes that the post-certification deposition testimony of former and current Eddie Bauer employees shows that the off-the-clock exit inspections occurred more frequently before 2017. To demonstrate, the Court has reproduced Table 2 in Mr. Crandall's report identifying only those individuals who worked for Eddie Bauer during Heredia's proposed pre-2017 class period:[3]

---

[3] Christine Brown worked for Eddie Bauer's Novato (Vintage Oaks) store from July 2011 to 2013. Brown Dep. 8:24-9:16, ECF 71-1, Exh. H. Colleen Cash worked at Eddie Bauer's Viejas store from May 2014 to November 2017. Cash Dep. 11:1-10, 15:8-21, ECF 71-1, Exh. E. Katie Cheetham worked for Eddie Bauer from September 16, 2013 to July 18, 2014 in the Novato store. Cheetham Dep. 7:1-6, 1:16-2:3, ECF 71-1, Exh. A. Ms. Cheetham was again hired by Eddie Bauer on August 14, 2016 and worked at the Novato store until October 11, 2016. *Id.* 9:1-5, 9:22-23. Ms. Cheetham also worked for a week at the Santa Rosa store and received a 7-day training at the Vacaville store. *Id.* 104:13-105:4. Teresa Kober (Ameluxen) worked at Eddie Bauer's Cabazon store around 2012 (or 2013) to 2014. Ameluxen Dep. 11:1-12:1, ECF 54-1, Exh. C. Elicia Maurer has worked for Eddie Bauer's Shasta store since 2010. Maurer Dep. 11:1-18, ECF 72-1, Exh. F. Joyce O'Brien worked for Eddie Bauer from 2007 to 2017 at three stores: Sacramento, Citrus Heights and Roseville. O'Brien Dep. 11:1-21. ECF 71-1, Exh. B. Martha Price worked at Eddie Bauer's Gilroy store from 2013 to October 2014. Price Dep. 14:1-10, 52:7-22, 57:15-20, ECF 71-1, Exh. D. Jean-Jacques Reibel has worked at Eddie Bauer's Corte Madera store in two stints: (1) November 2014 to January 2016 and (2) June 2017 to present. Reibel Dep. 13:17-14:11, ECF 72-1, Exh. H. Sheryl Saporsantos worked at Eddie Bauer's San Francisco store from October 2014 to August 2016. Saporsantos Dep. 14:17-15:8, ECF 77-1, Exh. J.

14

| TABLE 2 | | |
| --- | --- | --- |
| Testimony Regarding Frequency Of Exit Inspections That Occurred On The Clock | | |
| Class Member | On The Clock | Off The Clock |
| [redacted] | | |
| Christine Brown | 25% | 75% |
| Colleen Cash | 10% | 90% |
| Katie Cheetham | 0% | 100% |
| Teresa Kober (Ameluxen) | 0% | 100% |
| Elicia Maurer | 85% | 15% |
| [redacted] | | |
| Joyce O'Brien | 0% | 100% |
| Marta Price | 0% | 100% |
| [redacted] | | |
| Jean-Jacques Reibel | 100% | 0% |
| Sheryl Saporsantos | 0% | 100% |

Crandall Supp. Report ¶ 113, Table 2 (redacted to show only those employees who worked for Eddie Bauer during the pre-2017 period). It is undisputed that five pre-2017 employees (Cheetham, Kober, O'Brien, Price, and Saporsantos) testified that, in their experience, all exit inspections occurred off the clock. *See id.* However, several other employees testified that bag checks were conducted on the clock even before 2017. Setting aside Ms. Cash's experience[4], three of the nine pre-2017 deponents (Brown, Maurer, and Reibel), who worked at different California stores, testified that all or a significant portion of the exit inspections were done on the clock.

Christine Brown worked for Eddie Bauer's in Novato (Vintage Oaks) store from July 2011 to 2013 – well before 2017. Brown Dep. 8:24-9:16, ECF 72-1, Exh. D. Ms. Brown testified that the "choice of whether it was done on the clock or off the clock was based on the particular day's circumstances of where you were and the time of day and where the manager was." *Id.* 54:25-55:4. Accordingly, Ms. Brown explained: "If I was with the manager and we were clocking out, and we

---

[4] Ms. Cash testified that her exit inspections were "usually" off the clock and estimated that 90% of the time they were off the clock. Cash Dep., 25:21-26:10, ECF 71-1, Exh. E.

were both standing at the door and she was ready to set the alarm, then she would look in my bag, I'd clock out, and then we would both walk out together when she set the alarm." *Id.* 53:19-23. Ms. Brown estimated that 75% of exit inspections were off the clock. Brown Dep. 24:1-7, ECF 71-1, Exhibit H.

Elicia Maurer is a current Eddie Bauer employee and has worked at the Shasta store since 2010. Maurer Dep. 11:1-18, ECF 72-1, Exh. F. Ms. Maurer started as a Sales Associate and was promoted to an Assistant Store Manager in the summer of 2014 and then Store Manager in July 2015. *Id.* 11:1-15. Ms. Maurer testified that from 2010 to 2015, there were no bag checks at all at the Shasta store. *Id.* 21:15-22:9. In the 2015 to 2017 timeframe, Ms. Maurer chose to show her bag for inspection 75% of the time. Maurer Dep. 89:3-8, ECF 54-1, Exh. K. In those occasions where her bags were inspected, approximately 15% were off the clock. *Id.* 89:10-13. Since October 2017, all of Ms. Maurer's bag checks have been on the clock. Maurer Dep. 119:13-16, ECF 51-4.

Jean-Jacques Reibel was an Assistant Manager at Eddie Bauer's Corte Madera store from November 2014 to January 2016, left the company, and was rehired in June 2017. Reibel Dep. 13:17-14:11, ECF 72-1, Exh. H. Mr. Reibel testified: "I always got my bag checked before I clock out, and I always check employees' bags before they clock out; otherwise, I will refuse to check their bags." *Id.* 26:21-27:7. Specifically addressing his first (pre-2017) stint at Eddie Bauer, Mr. Reibel testified:

> Q. So even though you never saw a bag-check policy in 2014 or 2015 or even 2016, your first stint with Eddie Bauer, you still during that entire period of time were doing bag-checks on the clock, right?
> …
> A. I guess just by default. Because associates, if they are still having to stay in the store, they want to get paid, so they just don't clock off.

*Id.* 128:8-18.

In sum, the record shows that in at least three of the thirteen[5] Eddie Bauer California stores, employees were undergoing the inspections on the clock (or no inspections at all), even before 2017. Although Heredia need not show 100% uniformity of experience across the entire class, the disparity

---

[5] Heredia informs the Court that there are 13 Eddie Bauer stores in California. ECF 74 at 5, n. 1. Eddie Bauer's expert notes that there are 14. Crandall Decl. ¶ 55.

16

here is simply too significant to allow the narrowed class to proceed. The Court disregarded the modest portion of on-the-clock bag checks reported by Ms. Cash (10%), but the Court is persuaded that the far more significant disparity reported by Ms. Maurer (85% on the clock), Mr. Reibel (100% on the clock), and Ms. Brown (25% on the clock) tip the balance against class certification. "[E]xistence of large numbers of class members who were never *exposed* to the challenged conduct to begin with" defeats predominance. *Torres*, 835 F.3d at 1136 (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012)); *see also In re: Autozone, Inc.*, 2016 WL 4208200 at *10 (decertifying a class where it was "no longer accurate to say that this case involves 'a uniform policy consistently applied' throughout the class period").

For the same reasons discussed in Section II of this Order, Heredia's proposed class cannot be certified because Eddie Bauer's exit inspection practice across its California stores was not uniform prior to January 2017.

### B. Prejudice to Eddie Bauer

Heredia argues that narrowing the class as she proposed would not prejudice Eddie Bauer because (1) the issues for trial will be the same as have been litigated to date and (2) the class will also necessarily include a smaller subset of Eddie Bauer's employees therefore further limiting its liability. Mot. to Modify at 7. Eddie Bauer responds that it has, and will continue to be, prejudiced if the class period is modified because (1) Eddie Bauer conducted fact and expert discovery based on the certified (and broader) class and (2) with the trial only four months away, Eddie Bauer may not file any more dispositive motions challenging the modified class. *See* ECF 72 at 9-13. The Court agrees with Eddie Bauer.

As discussed at the December 5, 2019 hearing, because a class was certified in this case Eddie Bauer, unlike Heredia, has been prohibited from contacting the class members to conduct further discovery—creating an unbalanced access to discovery. ECF 76, 10:19-11:12; s*ee also* ECF 72 at 13. Moreover, this Court permits only one motion for summary judgment per party, which Eddie Bauer filed based on the now-decertified class. ECF 51. In the remaining four months before trial, the Court will not be able to hear another motion for decertification. If the class is modified at this late stage in the case, Eddie Bauer would be prejudiced. *See In re TFT-LCD (Flat Panel)*

17

*Antitrust Litig.*, 267 F.R.D. 583, 591 (N.D. Cal. 2010), *amended in part*, No. M 07-1827 SI, 2011 WL 3268649 (N.D. Cal. July 28, 2011) (considering class modification where "the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants).

### C. Rule 23 Requirements

Finally, Eddie Bauer points out that Heredia's Motion to Modify Class Definition should be denied because she has not satisfied the requirements of Federal Rule of Civil Procedure 23. It is true that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). However, while "a district court may revisit a class certification order 'in the light of subsequent developments in the litigation,' any amendment thereto must satisfy the requirements of Rule 23." *Plascencia v. Lending 1st Mortg.*, 2012 WL 253319, at *3 (N.D. Cal. Jan. 26, 2012); *see also Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 211 (N.D. Cal. 2015) ("In order for the Court to modify the Class Certification Order, the modified class must meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)[.]").

Heredia's motion does not address any of the Rule 23 factors as they apply to her proposed redefined class. *See generally* Mot. to Modify. Instead, she presumes that based on the evidence collected after certification, the Court should simply "modify the class definition for trial." *Id.* at 1. In response to Eddie Bauer's criticism, Heredia argues that she "addressed the factors appropriately in her original certification motion, and also in her Opposition to Defendant's Motion for Decertification." ECF 74 at 7. Even if the Court were to accept Heredia's argument, her proposed modified class fails because the record does not support her claim of a uniform bag check policy prior to 2017. Thus, the Court need not address Eddie Bauer's Rule 23 argument.

### D. Conclusion

For the foregoing reasons, Plaintiff's Motion to Modify Class Definition is DENIED.

## V. ORDER

(1) Defendant's Motion for Summary Judgment Against the Certified Class (ECF 51) is TERMINATED AS MOOT.

(2) Defendant's Motion for Decertification (ECF 60) is GRANTED.

(3) Plaintiff's Motion to Modify Class Definition (ECF 71) is DENIED.

**IT IS SO ORDERED.**

Dated: January 10, 2020

_____
BETH LABSON FREEMAN
United States District Judge